# In the United States Court of Federal Claims

**No. 14-320C**
**Filed: November 23, 2015**

```
* * * * * * * * * * * * * * * * *   *
PETER LITTLE, et al.,               *
                                    *   Motion to Dismiss; Lack of Subject
                                    *   Matter Jurisdiction; Failure to State
                Plaintiffs,         *   a Claim; Special Pay Authority,
        v.                          *   5 U.S.C. § 5305; Maximum Payable
                                    *   Rate Rule, 5 C.F.R. § 531.221; Back
UNITED STATES,                      *   Pay Act, 5 U.S.C. § 5596; Mandatory
                                    *   Pay Retention, 5 C.F.R. § 536.301.
                Defendant.          *
                                    *
* * * * * * * * * * * * * * * * *   *
```

**Thom K. Cope**, Mesch, Clark & Rothschild, P.C., Tucson, AZ, for plaintiffs.

**A. Bondurant Eley**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were **Kathryn E. Witwer**, Trial Attorney, **Steven J. Gillingham**, Assistant Director, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division, Washington, D.C. **Susan Gibson**, Associate General Counsel of the U.S. Marshals Service, of counsel.

**O P I N I O N**

<u>**HORN, J.**</u>

**FINDINGS OF FACT**

Plaintiffs Peter Little, Kevin Kirsh, Orlando Luna, Carlos Najera, Allen Schrader, Jon Serdula, Thomas Rohn, Timothy Tobias, Andrew Robinson, and John Garrison filed a complaint, followed by an amended complaint, in the United States Court of Federal Claims. The amended complaint asserted that "[t]he USMS [U.S. Marshals Service] wrongfully paid Plaintiffs as GL 7-10 employees" and, by wrongfully paying plaintiffs as GL 7-10 employees, "the USMS committed an unjustified or unwarranted personnel action" that "resulted in the reduction of Plaintiffs' pay, allowances, and differentials." The parties have stipulated that between April 2008 and April 2013 plaintiffs were hired as Deputy U.S. Marshals in the U.S. Marshals Service through either the Federal Career Intern Program or through the competitive process after responding to a position announcement. Immediately before they were hired as Deputy U.S. Marshals by the U.S. Marshals Service, a component of the United States Department of Justice, all plaintiffs were employed by a different federal executive branch agency, the United States

Department of Homeland Security, as border patrol agents or federal air marshals.[1] Plaintiffs allege, and defendant does not contest, that at all times relevant for this matter, plaintiffs maintained law enforcement officer status.

The parties have stipulated that the U.S. Marshals Service is authorized to hire Deputy U.S. Marshals at either grade 05 or 07, depending on an applicant's qualifications. Plaintiffs were hired as Deputy U.S. Marshals at the pay grade and series: GL-0082-07, Step 10.  At the time the amended complaint was filed, all plaintiffs still were currently employed as Deputy U.S. Marshals.

The parties further stipulated that the U.S. Marshals Service hired plaintiffs Little, Kirsh, Luna, Najera, Schrader, Serdula, and Rohn as excepted appointments through the Federal Career Intern Program between April 2008 and August 2010.[2]  The Federal Career Intern Program was created in July 2000 by Executive Order 13162 and was designed to assist agencies to attract candidates for entry level or trainee positions.  See Exec. Order 13162, 65 Fed. Reg. 43211 (July 6, 2000).  The parties have stipulated that in January 2007, the U.S. Marshals Service began using the Federal Career Intern Program to fill entry level Deputy U.S. Marshal positions.  The parties have further

---

[1] Despite the shared "marshal" title, the Federal Air Marshal Service is a division of the Transportation Security Administration (TSA) within the Department of Homeland Security and is not part of the Department of Justice.  See https://www.tsa.gov/leader-bios/office-law-enforcementfederal-air-marshal-service (last visited Nov. 23, 2015).

[2] Plaintiff Peter Little was hired as a Deputy U.S. Marshal on April 17, 2008. Plaintiff Little was previously a Border Patrol Agent for the Bureau of Customs and Border Protection, Department of Homeland Security, at the General Schedule (GS) Grade 11, Step 2 pay rate.  Plaintiff Kevin Kirsh was hired as a Deputy U.S. Marshal on April 17, 2008. Plaintiff Kirsh was previously a Border Patrol Agent for the Bureau of Customs and Border Protection, Department of Homeland Security, at the GS Grade 11, Step 2 pay rate. Plaintiff Allen Schrader was hired as a Deputy U.S. Marshal on September 7, 2008. Plaintiff Schrader was previously an employee of the Federal Air Marshals Service, Transportation Security Administration, Department of Homeland Security, at the GS Grade 11, Step 6 equivalent pay rate.  Plaintiff Carlos Najera was hired as a Deputy U.S. Marshal on August 18, 2009.  Plaintiff Najera was previously a Border Patrol Agent for the Bureau of Customs and Border Protection, Department of Homeland Security, at the GS Grade 12, Step 3 pay rate.  Plaintiff Orlando Luna was hired as a Deputy U.S. Marshal on January 6, 2010.  Plaintiff Luna was previously a Border Patrol Agent for the Bureau of Customs and Border Protection, Department of Homeland Security, at the GS Grade 11, Step 2 pay rate.  Plaintiff Thomas Rohn was hired as a Deputy U.S. Marshal on March 3, 2010.  Plaintiff Rohn was previously a Border Patrol Agent for the Bureau of Customs and Border Protection, Department of Homeland Security, at the GS Grade 11, Step 6 pay rate.  Plaintiff Jon Serdula was hired as a Deputy U.S. Marshal on August 25, 2010. Plaintiff Serdula was previously an employee of the Federal Air Marshals Service, Transportation Security Administration, Department of Homeland Security, at the GS Grade 12, Step 5 equivalent pay rate.

stipulated that, at the time plaintiffs Little, Kirsh, Schrader, Najera, Luna, Rohn, and Serdula were hired, candidates who accepted appointments through the Federal Career Intern Program only could be hired to GS grades 05, 07, or 09. See 5 C.F.R. § 213.3202(o)(1) (effective May 11, 2006 to July 9, 2012).[3]  Moreover, the parties agree that the U.S. Marshals Service only was authorized to hire Deputy U.S. Marshals at either the 07 or 05 grade. In accordance with its authority, the U.S. Marshals Service appointed all Deputy U.S. Marshals hired through the Federal Career Intern Program, including plaintiffs, to either GL Grade 05 or GL Grade 07.  The authority to hire at either the 07 or 05 grade was explained in the Federal Career Intern Program Deputy U.S. Marshal position description document released to the public by the U.S. Marshals Service, which indicated that individuals selected would "fill entry level 082 Deputy positions at the GL-5 or GL-7 level."  The document explained that "[t]he FCIP [Federal Career Intern Program] gives the U.S. Marshals Service greater flexibility in recruiting, assessing and selecting candidates to fill Deputy U.S. Marshal Positions.  FCIP is a formal training and development program that can be used to attract high potential individuals to the Federal Government, specifically the USMS."  The Federal Career Intern Program was discontinued in March 2011.  See Exec. Order 13562, 75 Fed. Reg. 82585 (Dec. 27, 2010).

Distinct from plaintiffs Peter Little, Kevin Kirsh, Orlando Luna, Carlos Najera, Allen Schrader, Jon Serdula, and Thomas Rohn, plaintiffs Timothy Tobias, John Garrison, and Andrew Robinson were not appointed through the Federal Career Intern Program. Instead, plaintiffs Tobias, Garrison, and Robinson were appointed as Deputy U.S. Marshals on April 24, 2013 after successfully applying for positions with the U.S. Marshals Service through competitive job announcement CK502724BD, which indicated that the series and grade for the competed position was "GL-0082-07."[4]  The position announcement required applicants "[t]o qualify at the GL-07 level."

As a result of being hired as Deputy U.S. Marshals, all plaintiffs left the United States Department of Homeland Security.  The parties have stipulated that "[n]one of the

---

[3] Executive Order 13162, which created the Federal Career Intern Program, was superseded and revoked effective March 1, 2011, by Executive Order 13562, 75 Fed. Reg. 82585.  The regulation at 5 C.F.R. § 213.3202 was not modified to reflect this change until July 10, 2012, when the current version of 5 C.F.R. § 213.3202 became effective.

[4] Plaintiff Timothy Tobias was hired as a Deputy U.S. Marshal on April 24, 2013.  Plaintiff Tobias was previously a Border Patrol Agent for the Bureau of Customs and Border Protection, Department of Homeland Security, at the GS Grade 12, Step 3 pay rate. Plaintiff John Garrison was hired as a Deputy U.S. Marshal on April 24, 2013.  Plaintiff Garrison was previously a Border Patrol Agent for the Bureau of Customs and Border Protection, Department of Homeland Security, at the GS Grade 12, Step 3 pay rate. Plaintiff Andrew Robinson was hired as a Deputy U.S. Marshal on April 24, 2013. Plaintiff Robinson was previously a Border Patrol Agent for the Bureau of Customs and Border Protection, Department of Homeland Security, at the GS Grade 12, Step 2 pay rate.

ten plaintiffs were hired from other components or offices of the Department of Justice. All ten plaintiffs previously worked for components of the Department of Homeland Security prior to accepting appointments as Deputy U.S. Marshals" in the United States Department of Justice.

Upon accepting employment with the U.S. Marshals Service, all plaintiffs were appointed as Deputy U.S. Marshals at the pay grade and series of GL-0082-07, Step 10. Step 10 is the highest possible step for Grade 07. As Deputy U.S. Marshals, plaintiffs received a special base rate of pay for law enforcement officers, or "LEOs." An "LEO special base rate" is a rate "established for GS law enforcement officers at grades GS-3 through GS-10," and this rate "is used in lieu of a GS rate." 5 C.F.R. § 531.203 (2015).[5] The LEO special base rate was applied because plaintiffs were appointed to Grade 07, which is between grades GS-3 and GS-10. Law enforcement officers who receive the LEO special base rate are covered by the GS classification and pay system. See id. Aside from the LEO special base rate, the parties have stipulated that plaintiffs did not receive a special pay supplement or pay retention. At the time of plaintiffs' appointments, and since 2010, the Office of Personnel Management (OPM) had not designated a special pay rate for the occupational series 0082.

Plaintiffs allege that when they were hired by the U.S. Marshals Service they inquired about "the possibility of pay matching." Plaintiffs allege they were told that the U.S. Marshals Service would not "match" plaintiffs' prior rates of pay and that the highest starting salary for a Deputy U.S. Marshal position was GL-0082-07, Step 10.[6] The parties have stipulated that each plaintiff received a written offer letter that stated the specific salary he would receive as a Deputy U.S. Marshal, GL-0082-07, Step 10. The parties agree that before accepting the Deputy U.S. Marshal position, plaintiffs Little, Kirsh, Najera, Schrader, Garrison, Tobias, and Robinson each signed a written acknowledgement that stated the appointee was willing to accept a change to a lower grade and thereby receive a lower salary. According to the parties' joint stipulations, these seven plaintiffs believed that signing the written acknowledgment was a prerequisite to an appointment with the U.S. Marshals Service. Plaintiffs accepted the Deputy U.S. Marshal appointments with the knowledge that the U.S. Marshals Service

---

[5] In the amended complaint, plaintiffs' counsel does not cite the publication years corresponding to the statutes and regulations relied upon. The court reviewed the statutes and regulations as of the dates on which plaintiffs were hired and compared the language to the current versions of the statutes and regulations, which are cited herein. There appear to be no relevant, meaningful differences between the prior and current versions of the statutes and regulations pertaining to this case.

[6] According to the parties joint stipulation, the "GL" code included in the plaintiffs' pay grade and series, GL-0082-07, Step 10, identifies the designated pay plan. The "0082" identifies the occupational series corresponding to the Deputy U.S. Marshal positions. Pay plan codes are prescribed by the OPM for agency use. The "GL" pay plan code is applicable to law enforcement officers, covered by the General Schedule classification and pay system, who occupy a position between grades 03 through 10 and who receive an LEO special base rate of pay.

would not match the salaries they had received at their prior employment. Now, plaintiffs allege that they are entitled to "a rate of pay equal to their prior rates of pay," and that the GL-0082-07, Step 10 rate of pay is less than plaintiffs' rates of pay at their prior employment.

The parties have stipulated that the U.S. Marshals Service hired 1,117 Deputy U.S. Marshals between April 2008 and December 2014, including plaintiffs. Of the 1,117 deputies hired, 24 of them received pay retention so that their salaries as Deputy U.S. Marshals remained the same as their prior employment. None of these 24 deputies are plaintiffs in the above captioned case. These 24 Deputy U.S. Marshals were appointed through the Federal Career Intern Program and were previously employed by agencies other than the Department of Justice. These 24 Deputy U.S. Marshals were hired at the pay grade and series GL-0082-07, Step 00. The GL pay plan code only includes Steps 1 through 10; it does not account for Step 00. Step 00 represents a base rate of pay that exceeds the Step 10 base rate of pay. Step 00 indicates that the 24 Deputy U.S. Marshals received pay retention. Thus, the retained rate of pay that these 24 Deputy U.S. Marshals received at Grade 7, Step 00 was higher than the Grade 07, Step 10 rate of pay that plaintiffs received. The U.S. Marshals Service was made aware of the pay retention for only 24 of the Deputy U.S. Marshals, but declined to change the pay retention or extend it to all of the Deputy U.S. Marshals, including plaintiffs in this action.

In the amended complaint, plaintiffs contend that, as Deputy U.S. Marshals for the U.S. Marshals Service, they are "entitled to a rate of pay equal to their prior rates of pay" and that they were "wrongly paid at the GL 7-10 rate of pay" and "wrongly denied payment at the GL 7-00 special rate of pay" and the "corresponding pay adjustments, within-grade pay increases, and time-in-grade pay increases/promotions." Plaintiffs allege that they should receive the GL-7-00 rate of pay applied to the 24 Deputy U.S. Marshals because this rate of pay constitutes "a 'special rate of pay'," which must be applied to all qualifying employees, under 5 U.S.C. § 5305, 5 C.F.R. § 530.303, and 5 C.F.R. § 530.322. Plaintiffs assert that, in failing to uniformly provide this special rate of pay to them and all other deputies, the U.S. Marshals Service violated 5 U.S.C. § 5305, 5 C.F.R. § 530.303, and 5 C.F.R. § 530.322.

Plaintiffs' amended complaint also makes cursory mention of two other alleged regulatory bases for relief: 5 C.F.R. § 536.301, which, according to plaintiffs, requires mandatory pay retention, and 5 C.F.R. § 531.204, which discusses an agency's ability to apply the "maximum payable rate rule."[7] Plaintiffs do not specifically allege that the U.S. Marshals Service violated these two regulations, nor do plaintiffs specifically cite these regulations as the bases for relief to invoke jurisdiction.

---

[7] Plaintiffs' amended complaint cites 5 C.F.R. § 531.204 to support the assertion that "LEOs that move from a GS rate to a LEO special rate are entitled to the LEO rate that corresponds to his or her previous GS rate." The "maximum payable rate rule" appears in 5 C.F.R. § 531.221 (2015), which plaintiffs cite for the first time in their reply to defendant's motion to dismiss.

After filing their original complaint, plaintiffs filed an amended complaint. Subsequently, the parties filed a stipulation of partial dismissal, with prejudice, for all of plaintiffs' claims accruing prior to April 21, 2008, and the court granted the motion in an Order issued on April 23, 2015.   Plaintiffs Peter Little and Kevin Kirsh were hired as Deputy U.S. Marshals on April 17, 2008.   As a result of the dismissal, plaintiffs Little and Kirsh's alleged claims for back pay or "pay adjustments, within-grade pay increases, and time-in-grade pay increases/promotions" could not have begun to accrue prior to April 21, 2008.   Thereafter, the United States filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) (2015), or in the alternative for summary judgment, because, according to defendant, plaintiffs are not entitled to additional pay pursuant to OPM's special pay authority or the maximum payable rate rule and plaintiffs are not eligible for mandatory pay retention.   Alternatively, defendant seeks summary judgment and asserts that plaintiffs waived their right to pay retention.   Plaintiffs responded, defendant replied, and plaintiffs filed another response, a sur-reply. In their sur-reply, plaintiffs put forth new and additional reasons on which they base their request for relief, which either were not clearly asserted previously or were entirely absent in their original complaint or amended complaint. Following oral argument, plaintiffs filed another motion to amend the pleadings and to produce additional evidence, which was denied, but generated limited additional briefing to allow both parties to address plaintiffs' newly offered legal and factual arguments raised by plaintiffs' counsel.

## DISCUSSION

The court examines plaintiffs' amended complaint to determine its sufficiency. "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed."  Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Authentic Apparel Grp., Inc. v. United States, 123 Fed. Cl. 92, 95 (2015); Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010).

Under both RCFC 8(a)(2) and Rule (8)(a)(2) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2); Fed. R. Civ. P. 8(a)(2) (2015); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts

"are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56, 570 (footnote and other citations omitted; omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–57, 570); Resource Investments, Inc. v. United States, 785 F.3d 660, 669 (Fed. Cir. 2015) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting Bell Atl. Corp. v. Twombly, 550 U.S.at 555); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354–55 (Fed. Cir.), cert. denied, 131 S. Ct. 92 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also Solaria Corp. v. United States, 123 Fed. Cl. 105, 113 (2015); Vargas v. United States, 114 Fed. Cl. 226, 232 (2014); Fredericksburg Non-Profit Housing Corp. v. United States, 113 Fed. Cl. 244, 253 (2013), aff'd, 579 F. App'x 1004 (Fed. Cir. 2014); Three S

Consulting v. United States, 104 Fed. Cl. 510, 523 (2012), aff'd, 562 F. App'x 964 (Fed. Cir. 2014), reh'g denied (Fed. Cir. 2014); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 726–27 (2010), appeal dismissed, 454 F. App'x 900 (Fed. Cir. 2011); Legal Aid Soc'y of New York v. United States, 92 Fed. Cl. 285, 292, 298, 298 n.14 (2010). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'"  Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  Henderson ex rel. Henderson v. Shinseki, 526 U.S. 428 (2011); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. at 506; see also Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011).  In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise sua sponte, even where . . . neither party has raised this issue."  Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir. 2004) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir. 1998), reh'g denied and en banc suggestion declined (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part, 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do

not raise or contest the issue."), <u>reh'g and reh'g en banc denied</u>, 614 F.3d 1330 (Fed. Cir. 2010), <u>cert. denied</u>, 562 U.S. 1169 (2011).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. <u>See Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555-56 (citing <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 508 n.1 (2002)))); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), <u>abrogated by Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), <u>recognized by Davis v. Scherer</u>, 468 U.S. 183, 190 (1984); <u>United Pac. Ins. Co. v. United States</u>, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); <u>Samish Indian Nation v. United States</u>, 419 F.3d 1355, 1364 (Fed. Cir. 2005); <u>Boise Cascade Corp. v. United States</u>, 296 F.3d 1339, 1343 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2002), <u>cert. denied</u>, 538 U.S. 906 (2003).  If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. <u>McNutt v. Gen. Motors Acceptance Corp. of Ind.</u>, 298 U.S. 178, 189 (1936); <u>see also Land v. Dollar</u>, 330 U.S. 731, 735 n.4 (1947); <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 747 (Fed. Cir. 1988); <u>see also Baha v. United States</u>, 123 Fed. Cl. 1, 4 (2015); <u>Catellus Dev. Corp. v. United States</u>, 31 Fed. Cl. 399, 404–05 (1994).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012).  As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained.  <u>See United States v. Navajo Nation</u>, 556 U.S. 287, 289–90 (2009) (<u>Navajo Nation II</u>); <u>United States v. Mitchell</u>, 463 U.S. 206, 216 (1983) (<u>Mitchell II</u>); <u>see also Banks v. United States</u>, 741 F.3d 1268, 1275 (Fed. Cir. 2014); <u>Greenlee Cnty., Ariz. v. United States</u>, 487 F.3d 871, 875 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2007), <u>cert. denied</u>, 552 U.S. 1142 (2008); <u>Palmer v. United States</u>, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act.  The claim must be one for money damages against the United States. . . ."  United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Hopi Tribe v. United States, 782 F.3d 662, 666-667 (Fed. Cir. 2015); Smith v. United States, 709 F. 3d 1114, 1116 (Fed. Cir. 2013), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims.  The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 605-06, 372 F.2d 1002, 1007-08 (1967) (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury."  Eastport S.S., 372 F.2d at 7. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum."  Id.; see also Testan v. United States, 424 U.S. 392, 401-02 (1976) ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Estes v. United States, 123 Fed. Cl. 74, 81 (2015); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v.

Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1351 (Fed. Cir. 2015); Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009).  The source of law granting monetary relief must be distinct from the Tucker Act itself.  See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts).").  "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'"  Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

Plaintiffs attempt to rely on the following statutes and regulations to assert that, as Deputy U.S. Marshals, they are entitled to pay from the U.S. Marshals Service that matches the pay they received at their immediately preceding employment: Special Rate of Pay, 5 U.S.C. § 5305, 5 C.F.R. § 530.303, 5 C.F.R. § 530.322; Maximum Payable Rate Rule, 5 C.F.R. § 531.204, 5 C.F.R. § 531.211(b); 5 C.F.R. § 531.221; and Mandatory Pay Retention, 5 C.F.R. § 536.301(a)(5).

Although defendant agrees with plaintiffs' contention that 5 U.S.C. § 5305 is a money-mandating statute, which vests jurisdiction in this court over plaintiffs' amended complaint, defendant argues that plaintiffs are not entitled to a base rate of pay equal to what they were paid at the Department of Homeland Security under 5 U.S.C. § 5305, 5 C.F.R. § 530.303, and 5 C.F.R. § 530.322 because "they are not within the group or category of employees entitled to pay" under these provisions.  Defendant argues that the plaintiffs' Deputy U.S. Marshal position "has not been designated by OPM [Office of Personnel Management] as eligible for a special rate pursuant to 5 U.S.C. § 5305."  To support its position, defendant states:

> [P]laintiffs fail to allege that the agency's erroneous payment of pay retention meets the statutory and regulatory requirements for the establishment of a special rate. Such requirements include, among other things, that an authorized agency official in the agency headquarters office submit to OPM a request to establish a special rate for a category of employees. 5 C.F.R. § 530.305(a). The request must include a certification by the authorized agency official and supporting data that the requested special rates are necessary to ensure adequate staffing levels to accomplish the agency's mission. 5 C.F.R. § 530.305(a) and (b). . . . OPM, not the agency, must then evaluate the agency's request, considering whether recruitment or retention efforts in an occupation or area are "significantly handicapped."

11

Defendant also argues that plaintiffs are not entitled to relief under the maximum payable rate rule because "the Marshals Service complied with the maximum payable rate rule" in setting plaintiffs' pay by comparing plaintiffs' prior rates of pay with the applicable rates for grade 07, and appointing plaintiffs to step 10, the highest step in the grade 07 range. Additionally, defendant argues that "pursuant to the regulations, plaintiffs are not entitled to pay retention because they transferred to the Department of Justice from the Department of Homeland Security" and "[t]he regulations expressly require that, to be eligible for pay retention, an employee must transfer from within the *same* agency." (emphasis in original).

Plaintiffs argue that the Grade 07, Step 00 rate of pay applied to the 24 Deputy U.S. Marshals hired through the Federal Career Intern Program initiative, but not applied to plaintiffs, "constitutes a 'special rate of pay' under 5 U.S.C. § 5305, 5 C.F.R. § 530.303, and 5 C.F.R. § 530.322." Defendant argues, however, that pursuant to 5 U.S.C. § 5305 "the Office of Personnel Management (OPM) must designate a position as eligible for [a special rate of pay] and OPM has not designated the Deputy U.S. Marshal position as eligible for the additional pay," therefore "[p]laintiffs' amended complaint fails to state a claim." Defendant also asserts that "the inadvertent payment of pay retention — an entirely distinct pay supplement authorized pursuant to a different statute and set of implementing regulations — to 24 deputies does not constitute the establishment of a special rate pursuant to 5 U.S.C. § 5305" by the Marshals Service.[8] Defendant argues that the regulations prescribe a process for designating a position as eligible for a special rate of pay, which requires an agency to submit a request to OPM, with "an accompanying certification and data to substantiate" its request. Defendant contends that "[a]n agency cannot unilaterally create a special rate for a particular position or location."

Under 5 U.S.C. § 5305(a)(1), OPM maintains special pay authority[9] that it may exercise, at its discretion, when it finds "that the Government's recruitment or retention efforts with respect to 1 or more occupations in 1 or more areas or locations are, or are likely to become, significantly handicapped" due to specifically enumerated circumstances. 5 U.S.C. § 5305(a)(1) (2012). With this authority, OPM can establish "higher minimum rates of pay for 1 or more grades or levels, occupational groups, series, classes, or subdivisions thereof, and may make corresponding increases in all rates of the pay range for each such grade or level." Id. The rates that OPM may establish are designated "special rates." Under 5 U.S.C. § 5305(a)(1), "the President may designate another agency to authorize special rates." 5 U.S.C. § 5305(a)(1). This statute does not,

---

[8] Defendant refers to an agency's discretion to choose to provide pay retention, which is authorized under 5 C.F.R. § 536.302. This regulation grants agencies the authority to exercise discretion and optionally retain an employee's prior rate of pay. Defendant explains that the U.S. Marshals Service acted within its discretion to optionally retain the pay of 24 new deputies pursuant to that regulation without creating an obligation or mandate to retain the pay of all new deputies.

[9] The Office of Personnel Management is charged with prescribing by regulation the circumstances under which, and the extent to which, special rates under 5 U.S.C. § 5305 are considered basic pay. See 5 U.S.C. § 5334(b) (2012).

however, grant authority to establish special rates for individuals.  See generally 5 U.S.C. § 5305 (2012).  Additionally, 5 U.S.C. § 5305(a)(2) explains that "[t]he head of an agency may determine that a category of employees of the agency will not be covered by a special rate authorization."  5 U.S.C. § 5305(a)(2).

Congress explained the policy priorities that motivated the creation of OPM's special rate authority:

> It is the policy of Congress that Federal pay fixing for employees under the General Schedule be based on the principles that-- (1) there be equal pay for substantially equal work within each local pay area; (2) within each local pay area, pay distinctions be maintained in keeping with work and performance distinctions; (3) Federal pay rates be comparable with non-Federal pay rates for the same levels of work within the same local pay area; and (4) any existing pay disparities between Federal and non-Federal employees should be completely eliminated.

5 U.S.C. § 5301 (2012).

Pursuant to the statutory authority at 5 U.S.C. § 5305, OPM promulgated regulations further describing the process for exercising and applying the special pay authority.  These regulations are found in Title 5 of the Code of Federal Regulations under Part III, Subpart D, Subchapter B, Part 530, Subpart C. "Special Rate Schedules for Recruitment and Retention."  Pursuant to 5 C.F.R. § 530.303(a):

> OPM may establish special rates for employees paid under a statutory pay system (as defined in 5 U.S.C. § 5302(1)) or any other pay system established by or under Federal statute for civilian positions in the executive branch.  Special rates apply only to GS employees unless the approved schedule coverage criteria specifically state otherwise.

5 C.F.R. § 530.303(a) (2015).  Subparagraph (b) provides that "[a]n employee's coverage under a special rate schedule is subject to the coverage conditions established by OPM for that schedule."  5 C.F.R. § 530.303(b).  When OPM has established a special rate for employees,

> an agency must pay the applicable special rate to any employee who meets the coverage conditions established by OPM with respect to the special rate schedule unless an authorized agency official determines that a category of employees of the agency will not be covered by a proposed or existing special rate schedule.

5 C.F.R. § 530.303(c).

Additionally, 5 C.F.R. § 530.303(d) states that "an employee is not entitled to a special rate if he or she is entitled to a . . . retained rate," thereby distinguishing between

an authorized special rate and a retained rate. See 5 C.F.R. § 530.303(d). Similarly, the term "special rate" and the term "LEO special base rate" are defined separately in the regulation that carries out OPM's statutory special rate authority, thereby distinguishing between an authorized special rate and an LEO special base rate. See 5 C.F.R. § 530.302 (2015).

The special pay authority statute and implementing regulations mandate that the Federal Government pay an employee "who meets the coverage conditions established by OPM" the applicable special rate. 5 C.F.R. § 530.303(c) (emphasis added). According to 5 C.F.R. § 530.322(b), "[a]s provided in § 530.303(d), if an employee meeting the coverage conditions for a newly established or increased special rate schedule is entitled to a higher rate of basic pay . . . the employee must be paid at that higher rate." 5 C.F.R. § 530.322(b) (2015). An employee who qualifies for an authorized special pay rate has a right to be paid according to that rate.[10]   Neither 5 U.S.C. § 5305 nor 5 C.F.R. §§ 530.303 or 530.322, however, require an agency to pay an employee a special pay rate that was not created consistent with the statute and regulations—such as a "de facto" special pay rate, as plaintiffs allege. See generally 5 U.S.C. § 5305; 5 C.F.R. § 530.303 (2015); 5 C.F.R. § 530.322 (2015).

Plaintiffs allege that the U.S. Marshals Service created a "de facto" special pay rate that it applied to the 24 Deputy U.S. Marshals who were appointed at the GL-07, Step 00 level. To support this contention, plaintiffs cite to the special pay statute, 5 U.S.C. § 5305, and regulations, 5 C.F.R. § 530.303 and 5 C.F.R. § 530.322, and argue that these laws "contain references to circumstances wherein agencies other than OPM may establish 'special pay classes.'" Defendant asserts, however, that, although any agency can request a special pay rate, "it is OPM, not the agency, that is authorized to determine whether to establish a special rate for a particular location or position." See 5 C.F.R. § 530.305 (2015). The only mention in the special pay authority statute of another agency authorizing special rates is "[i]n the case of individuals not subject to the provisions of this title governing appointment in the competitive service," in which case, "the President may designate another agency to authorize special rates" under 5 U.S.C. § 5305(a)(1). Thus, the only entities with authority to exercise the special pay authority in 5 U.S.C. § 5305 are OPM and any other agency designated by the President. Plaintiffs do not allege that the President has designated the U.S. Marshals Service to authorize special rates under the special pay authority. Additionally, as evidenced by OPM's public website, OPM has not established a special rate of pay for occupational series 0082—the job series held by the plaintiffs. Without citing to specific language that authorizes the U.S. Marshals Service to establish a special pay rate, plaintiffs make the bare assertion that the U.S. Marshals Service's action constituted the establishment of a "de facto" special pay class, "under which Plaintiffs are covered and entitled to additional pay" pursuant to 5 U.S.C. § 5305, 5 C.F.R. § 530.303 and 5 C.F.R. § 530.322.

---

[10] An employee who qualifies for an authorized special pay rate has a right to be paid according to that rate unless the head of the employee's agency follows the statutorily prescribed process for waiving the special pay rate. See 5 U.S.C. § 5305(a)(2).

These statutes and regulations, however, do not suggest there is authority to establish a "de facto" special pay rate that would be binding on an agency.  There is no mention in either the statute or regulations concerning a "de facto" special pay rate.  Therefore, even assuming plaintiffs' factual allegations regarding the higher pay rate of the 24 deputies are true, because the special pay authority statute and regulations do not contemplate "de facto" special pay rates, 5 U.S.C. § 5305, 5 C.F.R. §§ 530.303 and 530.322 do not provide a basis that would plausibly entitle plaintiffs to seek relief.  Accordingly, plaintiffs' claims for money damages under 5 U.S.C. § 5305, 5 C.F.R. §§ 530.303 and 530.322 must be dismissed for failure to state a claim for which relief may be granted.

Next, plaintiffs allege that the U.S. Marshals Service incorrectly applied the maximum payable rate rule.  Defendant denies this allegation.  Under 5 C.F.R. § 531.221, an agency may, in its discretion, "apply the maximum payable rate rule . . . to determine an employee's payable rate of basic pay under the GS pay system at a rate higher than the otherwise applicable rate upon reemployment" or transfer.  5 C.F.R. § 531.221 (2015).  When an agency elects to determine an employee's rate of basic pay under 5 C.F.R. § 531, Subpart B, "[t]he employee is entitled to the highest applicable rate of basic pay as his or her payable rate."  5 C.F.R. § 531.204(b) (2015).  This regulation sets forth the process for determining the maximum payable rate, and when an agency chooses to apply the rule, it must follow the process, as set forth in 5 C.F.R. § 531.221(b), for determining that rate, and then an agency must pay the employee the maximum payable rate identified.

This process begins with comparing "the employee's highest previous rate with the GS rates for the grade in which pay is currently being set."  5 C.F.R. § 531.221(b)(1).  The process further requires an agency to "[i]dentify the lowest step in the grade at which the GS rate (or LEO special base rate, if applicable) was equal to or greater than the employee's highest previous rate."  5 C.F.R. § 531.221(b)(2).  The maximum payable GS rate or LEO special base rate that the agency may pay an employee is the GS rate or LEO special base rate that corresponds to the lowest step in the grade in which pay is currently being set that is either equal to or greater than the employee's highest previous rate.  See 5 C.F.R. § 531.221(b)(3).  When an employee's previous rate is greater than the rate associated with the highest step in the grade in which pay is being set, the agency is supposed to identify the step 10 rate as the maximum payable rate for the employee.  See 5 C.F.R. § 531.221(b)(2)-(3).

Subpart B of 5 C.F.R. § 531 also explains the process for determining an employee's maximum payable rate when the highest previous rate is based on an employee's special rate, as established by OPM.  As discussed above and defined in 5 C.F.R. § 531.203, a "special rate" is a "rate of pay within a special rate schedule established under 5 C.F.R. part 530, subpart C . . . [t]he term special rate does not include an LEO special base rate."

All ten plaintiffs were hired at the highest step rate for the Grade 07 position.  Plaintiffs allege they are entitled to relief under 5 C.F.R. § 531.221, the maximum payable

rate rule, because the U.S. Marshals Service erred in applying the rule.  Specifically, plaintiffs argue that the U.S. Marshals Service "Artificially Limited the Pay Range for the Deputy U.S. Marshal Position" thereby misapplying the "'maximum payable rate' rule." Plaintiffs' argument rests on the contention that the U.S. Marshals Service could, and should, have determined plaintiffs' pay rate based on Grade 09, instead of Grade 07, and a step rate within Grade 09 that corresponded to their highest previous pay. Defendant, however, argues that "plaintiffs are not entitled to additional pay pursuant to the maximum payable rate rule" because the agency complied with the rule when it first established plaintiffs' pay.  According to defendant, the "maximum payable rate rule allows an agency to set pay for an employee at a higher rate, based on the rate of pay the employee previously received in another Federal job . . . . Under this rule, however, an employee's pay may not exceed the rate for step 10 of the grade in which pay is currently being set. 5 C.F.R. § 531.221."  Defendant asserts that, because entry-level Deputy U.S. Marshals were hired at either the GL-5 or GL-7 pay grade, the highest applicable rate under the maximum payable rate rule for the Deputy U.S. Marshal position was GL-7, step 10, and "[i]t is undisputed that all ten plaintiffs were hired at this level."

The parties have stipulated that the U.S. Marshals Service appointed plaintiffs to GL-7 and that the U.S. Marshals Service determined the plaintiffs' maximum payable rate using Grade 07.  Plaintiffs do not allege that the U.S. Marshals Service did not use the "grade in which pay is currently being set" when deciding the maximum payable rate that it would pay plaintiffs.  Instead, plaintiffs argue that the U.S. Marshals Service did not use Grade 09, the highest possible applicable grade for job series 0082, thereby failing to comply with the rule.  Plaintiffs argue that this is the highest applicable grade because the "applicable rate range for the 0082-series Deputy U.S. Marshal position goes as high as Grade 9."  Defendant asserts, however, that as a rule the "Marshals Service did not hire entry-level Deputy U.S. Marshals at the GL-9 level."  Defendant points to the hiring documents for both the Federal Career Intern Program and the competitive hiring process, which indicate that the Marshals Service announced and intended to fill the entry-level Deputy U.S. Marshal positions at the GL-5 or 7 pay grade, not at the GL-9 pay grade.  To counter plaintiffs' argument that the GL-9 pay grade should have been used because the 0082 occupational series has promotional potential to GL-9, defendant argues that the possibility of "career progression within the Marshals Service does not mean that the agency hired entry-level deputies at any level higher than that stated in the vacancy announcement."

Notwithstanding plaintiffs' position that "the applicable rate range for the 0082-series Deputy U.S. Marshal position goes as high as Grade 9," the maximum payable rate rule does not require an agency to use the highest "applicable rate range" for a job series in setting an employee's maximum pay rate.  Instead, the rule requires an agency to "[i]dentify the rate on the currently applicable range of GS rates or LEO special base rates for the employee's current position of record and grade" that is equal to or greater than the employee's highest previous rate.  See 5 C.F.R. § 531.221(b). Thus, the applicable rate range is determined by the employee's position of record.  The regulation defines a position of record as "an employee's official position (defined by grade, occupational series, employing agency, LEO status . . .) as documented on the

employee's most recent Notification of Personnel Action . . . and current position description." 5 C.F.R. § 531.203; see also Connolly-Lohr v. United States, 112 Fed. Cl. 350, 352 (2013) (explaining that "position of record" refers to an employee's current, not former, position as it is listed on the employee's most recent Standard Form 50).  In Connolly-Lohr v. United States, the Court of Federal Claims held that "the regulation explicitly provides that an employee's position of record is the one that the employee has most recently accepted." Connolly-Lohr v. United States, 112 Fed. Cl. at 353.  Here, the plaintiffs' position of record was GL-0082-07, Step 10.

The prescribed process for determining plaintiffs' maximum payable rate required the U.S. Marshals Service to compare plaintiffs' highest previous rate with the GS rates for the grade in which pay was being set—Grade 07.  If the highest rates paid to plaintiffs at the Department of Homeland Security were more than the rates paid at the highest step of Grade 07, then the U.S. Marshals Service was supposed to identify the Grade 07, Step 10 rate as the lowest possible step in plaintiffs' grade.  Plaintiffs assert, and defendant does not contradict, that plaintiffs received a higher rate of pay at the Department of Homeland Security than the rate of pay associated with the highest step of Grade 07 at the U.S. Marshals Service.  As the process required, plaintiffs were properly appointed to GL 7, Step 10.

Plaintiffs have failed to state a claim that would plausibly entitle them to relief under 5 C.F.R. § 530.221 because, even if plaintiffs' allegations are assumed to be true, they would not violate the maximum payable rate rule.  Plaintiffs do not allege that the agency failed to use the position of record or the grade in which pay was currently being set in determining plaintiffs' maximum payable rate.  Notwithstanding plaintiffs' position that the U.S. Marshals Service "misapplied" the maximum payable rate rule, the substance of plaintiffs' argument is that they disagree with the pay grade that was chosen for the Deputy U.S. Marshal position, not that the U.S. Marshals Service violated the regulatory process.  Accordingly, plaintiffs' claims for money damages from the United States for allegedly violating the maximum payable rate rule are dismissed because plaintiffs have failed to plead facts that plausibly suggest an entitlement to relief under 5 C.F.R. § 531. 221.[11]

---

[11] To the extent that plaintiffs might try to argue that the U.S. Marshals Service should have appointed them to Grade 09 Deputy U.S. Marshal positions, 5 C.F.R. § 531.221 is not the proper basis to seek relief.  Furthermore, this court would not have jurisdiction to hear the claim that plaintiffs were improperly classified at Grade 07 and should have been classified at Grade 09.  See Bird v. United States, 231 Ct. Cl. 869, 870 (1982) (explaining that the United States Supreme Court in United States v. Testan, 424 U.S. at 403, previously ruled that neither the Classification Act nor the Back Pay Act created a substantive right to money damages for an allegedly wrongful civil service classification); see also Siegal v. United States, 38 Fed. Cl. 386, 388 (1997).  As the United States Supreme Court has determined that the Classification Act does not create a substantive right to claim monetary damages from the United States, this court would not have jurisdiction under the Tucker Act to hear a claim for monetary relief based on an alleged violation of the Classification Act.  See United States v. Testan, 424 U.S. at 403 (holding

As Deputy U.S. Marshals, plaintiffs receive a special base rate of pay for law enforcement officers, or "LEOs."   In the amended complaint, plaintiffs also assert that "[p]ursuant to 5 C.F.R. § 531.204, LEOs that move from a GS rate to a LEO special rate are entitled to the LEO rate that corresponds to his or her previous GS rate."   Defendant argues that plaintiffs "misquote the regulation.  The word 'previous' does not appear in this section and the regulation does not address pay matching or pay retention when an employee moves from one Federal position to another. It simply entitles law enforcement officers to higher base rates, which the plaintiffs are receiving here."   Plaintiffs' amended complaint misstates 5 C.F.R. § 531.204, which provides, in relevant part:

> (a) A law enforcement officer is entitled to LEO special base rates in lieu of GS rates at grades GS–3 through GS–10. A law enforcement officer is entitled to the LEO special base rate that corresponds to his or her grade and step. If an employee loses LEO status, the employee is entitled to the GS rate for his or her grade and step unless a higher rate is set under the maximum payable rate rule in § 531.221 or under the pay retention rules in 5 CFR part 536, as applicable. . . . A law enforcement officer may be entitled to a special rate that is computed using the underlying GS rate for the LEO's grade and step.
>
> (b) When an employee's GS rate or LEO special base rate is determined under the rules of this subpart, the agency must determine any other rate of basic pay to which the employee is entitled. . . . The employee is entitled to the highest applicable rate of basic pay as his or her payable rate.

5 C.F.R. § 531.204(a)-(b).  The regulation does not suggest that a law enforcement officer who moves from a GS rate to a LEO rate is entitled to the LEO rate that corresponds to his previous GS rate.   There is no language in the regulation concerning, directly or indirectly, an employee's previous pay rate.  See id.  Accordingly, plaintiffs have failed to state a claim for relief under this regulation.

In addition, plaintiffs allege that the U.S. Marshals Service violated 5 C.F.R. § 536.301, which mandates pay retention in delineated circumstances. Defendant, however, argues that 5 C.F.R. § 536.301 contains numerous "requirements that must be met for an employee to be eligible to retain his or her pay.  Plaintiffs fail to allege that they meet these requirements."   Defendant argues that "when the plaintiffs transferred from their positions at the Department of Homeland Security to the Marshals Service, they were not appointed to a position within the 'same agency' and, therefore, were not entitled to mandatory pay retention under 5 C.F.R. § 536.301."

In certain instances, an agency may be required to retain the pay of an employee who moves positions and would otherwise be subject to a reduction in pay so that the

---

that plaintiffs were "without the remedies in the Court of Claims of retroactive classification and money damages" in an action brought under the Classification Act).

employee's pay remains unchanged. Under the mandatory pay retention regulation, an agency:

> must provide pay retention to an employee who moves between positions under a covered pay system or from a position not under a covered pay system to a position under a covered pay system and whose payable rate of basic pay otherwise would be reduced . . . as a result of-
>
>> (1) The expiration of the 2–year period of grade retention under subpart B of this part;
>>
>> (2) A reduction in force or reclassification action that places an employee in a lower-graded position when the employee does not meet the eligibility requirements for grade retention under subpart B of this part;
>>
>> (3) A management action that places an employee in a non-special rate position or in a lower-paid special rate position from a special rate position;
>>
>> (4) A management action that places an employee under a different pay schedule;
>>
>> (5) A management action that places an employee in a formal employee development program generally utilized Governmentwide (e.g., Recent Graduates Program); or
>>
>> (6) A reduction or elimination of scheduled rates, special schedules, or special rate schedules, excluding—
>>
>>> (i) A statutory reduction in scheduled rates of pay under the General Schedule, including a reduction authorized under 5 U.S.C. 5303(b); or
>>>
>>> (ii) A statutory reduction in a prevailing rate schedule established under 5 U.S.C. chapter 53, subchapter IV, and 5 CFR part 532.

5 C.F.R. § 536.301(a)(1)-(6) (2015).

Of relevance here is 5 C.F.R. § 536.301(a)(5), which, according to defendant, "requires mandatory pay retention when an employee moves between federal positions where a reduction in pay results from '[a] management action hat [sic] places an employee in a formal employee development program generally utilized Government-wide such as…career intern programs.'" (alteration in original). The regulation defines when an employee is considered "placed:"

19

(d) An employee is considered "placed" under paragraph (a)(2), (3), (4), and (5) of this section only when the employee remains in a position in the same agency. Optional pay retention under § 536.302 may apply when an employee transfers to a different agency as a result of a reduction in force or reclassification action or is selected by a different agency to fill a position under a formal employee development program, if all other qualifying conditions are met.

5 C.F.R. § 536.301(d) (2015). Therefore, the mandatory pay retention regulation provides that an employee is considered "placed" in a formal employee development program under paragraph (a)(5) of this section only when the employee remains in a position in the same agency. See 5 C.F.R. § 536.301(d). As the regulation explicitly explains, if an employee is not placed in a formal employee development program within the same agency, this provision of the regulation mandating pay retention is not applicable, although optional pay retention might be available. The regulation states "[o]ptional pay retention under § 536.302 may apply when an employee transfers to a different agency . . . to fill a position under a formal employee development program, if all other qualifying conditions are met." Id. Agencies have the option to provide pay retention "to an employee not entitled to pay retention under § 536.301." 5 C.F.R. 536.302(a) (2015). The regulation permitting optional pay retention, 5 C.F.R. § 536.302, however, is not money-mandating.

The parties have stipulated that "[n]one of the ten plaintiffs were hired from other components or offices of the Department of Justice." The U.S. Marshals Service is an agency within the Department of Justice. See http://www.justice.gov/agencies (last visited Nov. 23, 2015). "All ten plaintiffs previously worked for components of the Department of Homeland Security prior to accepting appointments as Deputy U.S. Marshals." The Department of Homeland Security is a separate executive branch agency. Plaintiffs Tobias, Garrison, and Robinson were appointed as Deputy U.S. Marshals in April 2013 after successfully applying for positions with the U.S. Marshals Service through a competitive job announcement, and they were never a part of the Federal Career Intern Program. Moreover, none of the other circumstances mandating pay retention, as listed in 5 C.F.R. § 536.301(a)(1)-(6), can be applied to plaintiffs Tobias, Garrison, and Robinson. Under 5 C.F.R. § 536.301(a)(5), plaintiffs Little, Kirsh, Luna, Najera, Schrader, Serdula, and Rohn do not qualify for mandatory pay retention because they were not "placed" into a formal employee development program as defined in the mandatory pay retention regulation, and they did not remain "in a position in the same agency" when they became involved in the Federal Career Intern Program. See 5 C.F.R. § 536.301(d). Therefore, 5 C.F.R. § 536.301(d) makes pay retention optional and not mandatory in plaintiffs' cases. As such, even assuming plaintiffs' allegations as asserted in their complaint are true, plaintiffs have failed to plausibly suggest an entitlement to relief under this regulation because plaintiffs Tobias, Garrison, and Robinson were never involved in the Federal Career Intern Program and plaintiffs who were involved in the intern program, Little, Kirsh, Luna, Najera, Schrader, Serdula, and Rohn, were not "placed" in a formal management employee development program within the same

agency but, in fact, moved from the Department of Homeland Security to the U.S. Marshals Service.

Notwithstanding that plaintiffs are not entitled to mandatory pay retention under 5 C.F.R. § 536.301, defendant alleges that plaintiffs' decision to voluntarily transfer from employment at the Department of Homeland Security to the U.S. Marshals Service at the Department of Justice waived any right or entitlement plaintiffs may have had to pursue pay retention. Defendant alleges that plaintiffs waived their right to pay retention by voluntarily applying for and accepting positions with the U.S. Marshals Service with the knowledge that they would receive a lower salary in the new positions. Defendant argues that all "ten plaintiffs waived the right to matching pay when they accepted appointments with the Marshals Service knowing that they would not receive matching pay." To support the waiver argument, defendant highlights the stipulated facts, including that seven plaintiffs, Little, Kirsh, Najera, Schrader, Garrison, Tobias, and Robinson, signed a written acknowledgement of the pay decrease before accepting the new appointments with the U.S. Marshals Service. Plaintiffs, however, continue to contend that they did not knowingly waive pay retention and that defendant has failed to put forth sufficient evidence of a voluntary and intentional waiver of retained pay. Plaintiffs argue that the letters they received from the U.S. Marshals Service did not reference a waiver of mandatory pay retention and that defendant has not shown evidence that each plaintiff was aware of his rights to retained pay when plaintiffs accepted the Deputy U.S. Marshal position.

Waiver consists of "'an intentional relinquishment or abandonment of a known right or privilege.'" Hosey v. Interstate Commerce Comm'n, 132 F.3d 53 (Fed. Cir. 1997) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)); see also Cherokee Nation v. United States, 174 Ct. Cl. 131, 355 F.2d 945, 950 (1966); Public Serv. Co. of Ok. v. United States, 91 Fed. Cl. 363, 367 (2010). "Waiver may be either express or implied." Cherokee Nation v. United States, 174 Ct. Cl. 131, 355 F.2d at 950. The undisputed facts in this matter reveal that plaintiffs accepted the Deputy U.S. Marshal positions with the knowledge that the U.S. Marshals Service would not match the rate of pay they had received at their prior employment and that plaintiffs each voluntarily accepted a Deputy U.S. Marshal position with full knowledge of the salary they would receive. Plaintiffs each received a written offer letter that stated the specific salary he would receive as a Deputy U.S. Marshal, GL-0082-07, Step 10, which was lower than the salaries plaintiffs had received at the Department of Homeland Security. Moreover, the parties agree and have stipulated that before accepting the Deputy U.S. Marshal position, plaintiffs Little, Kirsh, Najera, Schrader, Garrison, Tobias, and Robinson each signed a written acknowledgement that stated the appointee was willing to accept a change to a lower grade and thereby receive a lower salary. Plaintiffs had the opportunity to compare their rates of pay at the Department of Homeland Security with what the Deputy U.S. Marshal position offered, and know that they would receive a reduction in pay. The parties stipulated that "[a]t the time of their hiring, the plaintiffs inquired about the possibility of 'pay matching,'" thereby indicating that plaintiffs were aware of pay retention when they accepted employment with the U.S. Marshals Service. The uncontested facts indicate that plaintiffs each exercised independent decision-making in changing employment from

the Department of Homeland Security to the U.S. Marshals Service with at least a general understanding of pay matching and the knowledge that pay matching would not be available at the U.S. Marshals Service.  Plaintiffs do not allege that there is a factual dispute about their independent and voluntary decisions to change employment. Therefore, assuming the facts plaintiffs allege are true, plaintiffs' undisputed voluntary actions negate any plausible entitlement to relief.  Furthermore, although plaintiffs do not have an actual right to mandatory pay retention, their actions at the time they accepted employment and lower salaries at the U.S. Marshals Service support a finding that plaintiffs waived any entitlement to pay retention.

Furthermore, that 24 Deputy U.S. Marshals received a higher rate of pay that was equal to the amount those employees received at their prior places of employment is not helpful to plaintiffs.  An agency may exercise its discretion and decide to retain pay for an employee.  Optional pay retention is permitted by 5 C.F.R. § 536.302, at an agency's discretion.  See 5 C.F.R. § 536.302 (2015).  The optional pay retention regulation is not money-mandating because it grants an agency complete discretion to decide whether or not to retain an employee's pay, and a plaintiff cannot rely on this regulation to invoke jurisdiction before this court under the Tucker Act.  Accordingly, to the extent plaintiffs claim money damages under 5 C.F.R. § 536.302, those claims are dismissed for lack of subject matter jurisdiction.

In their reply, plaintiffs also allege that defendant's motion must fail because there are material facts in dispute about "the nature of the payments to the 24 other Deputy U.S. Marshals," which are "crucial to Plaintiffs' case."  Citing to 5 U.S.C. § 5584, plaintiffs argue that "the Defendant must present some basis to justify why the comparator employees received more pay for identical work, and only if it was a mistake, why they didn't reduce the pay or seek reimbursement."  In response, defendant asserts that "[t]he Marshals Service's actions in deciding whether to seek reimbursement from these 24 deputies are irrelevant because, even assuming the failure to recoup the payments was unlawful, it would not entitle the plaintiffs to special pay under 5 U.S.C. § 5305."

Plaintiffs have not explained how the resolution of this allegedly material fact impacts whether or not plaintiffs are entitled to relief.  A justification for the pay rate of 24 other Deputy U.S. Marshals would not necessarily result in an entitlement to relief for plaintiffs.  Even if the U.S. Marshals Service could not supply a justification for the 24 Deputy U.S. Marshals that would withstand scrutiny, that would have no bearing on whether or not the law entitles plaintiffs currently before the court, or others, to relief.  In order to properly allege a claim for relief, plaintiffs must cite to an authority that plausibly provides a basis for relief.

In arguing that defendant must justify the higher pay rate it assigned to the 24 Deputy U.S. Marshals, plaintiffs cite to 5 U.S.C. § 5584.  Plaintiffs argue that, if the salaries distributed to the 24 deputies were overpayments, defendant must follow the procedures for recovering or waiving any overpayment, which are set forth in 5 U.S.C. § 5584.  This statute provides authority for the United States to waive a claim against a person arising out of an erroneous payment of pay or allowances to an

employee of an agency.  See 5 U.S.C. § 5584 (2012).  This statute also entitles a person who has repaid the United States all or part of a claim that has subsequently been waived to a refund within two years of the effective date of the waiver.  See 5 U.S.C. § 5584(c).  Plaintiffs, however, have not explained how 5 U.S.C. § 5584 could entitle the plaintiffs in this lawsuit to relief.  Additionally, plaintiffs have not explained how they would have standing to enforce their allegations based on 5 U.S.C. § 5584 against the U.S. Marshals Service.

In addition to the aforementioned bases for relief pled in plaintiffs' amended complaint, plaintiffs also contend that 5 U.S.C. § 5596, the Back Pay Act, is a money-mandating statute that entitles them to relief.  Citing Mendoza v. United States, 87 Fed. Cl. 331, 335 (2009), defendant argues that "[t]he Back Pay Act itself is not a jurisdictional statute and may not serve as a substantive basis for the plaintiffs' claims here."  Any reliance plaintiffs attempt to place on the Back Pay Act or its implementing regulations as an independent jurisdictional basis for an action in this court is unfounded.  See 5 U.S.C. § 5596 (2012).  "[T]he Back Pay Act 'is merely derivative in application; it is not itself a jurisdictional statute.'"  Vlahos v. United States, 111 Fed. Cl. 734, 739 (2013) (quoting United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983)); see also Grosdidier v. United States, 77 Fed. Cl. 106, 108-09 (2007). Unless some other provision of law commands payment of money to the employee for the "unjustified or unwarranted personnel action," the Back Pay Act is inapplicable.  Vlahos v. United States, 111 Fed. Cl. at 739; see also Spagnola v. Stockman, 732 F.2d 908, 912 (Fed. Cir. 1984); see also Taylor v. United States, 73 Fed. Cl. 532, 540 n.14 (2006); Ainslie v. United States, 55 Fed. Cl. 103, 105 (2003) ("[T]he Back Pay Act is merely 'derivative' in application, Connolly, 716 F.2d at 887, and is money-mandating only when a plaintiff's claim is 'based on violations of statutes or regulations covered by the Tucker Act.'" (quoting Worthington v. United States, 168 F.3d 24, 26 (Fed. Cir.), reh'g denied (Fed. Cir. 1999))); Dixon v. United States, 17 Cl. Ct. 73, 78 (1989).  Thus, in order for this court to assert jurisdiction over a claim utilizing the Back Pay Act, the plaintiff must establish an independent ground for entitlement to money damages based on an unwarranted personnel action that violates a statute or regulation covered by the Tucker Act. See Jones v. United States, 17 Cl. Ct. 78, 82–83 (1989).  Given the discussion above, this court cannot rely on the Back Pay Act to exercise jurisdiction and the Act does not offer any relief to plaintiffs.

In their supplemental brief, plaintiffs cite to additional statutes and regulations that they believe are applicable to their cases, which were not raised in plaintiffs' prior filings or complaint.[12]  These include: 5 U.S.C. § 5334; 5 U.S.C. § 5363; 5 C.F.R. § 302.102; and 5 C.F.R. § 531.211(b). First, plaintiffs assert that Title 5, Subchapter D of the United States Code "[c]ontains the statutory scheme applicable to pay-setting for Federal employees."  Specifically, plaintiffs state that 5 U.S.C. § 5334 "[s]ets out Federal employees' pay rate entitlement upon a change of appointment type, position, or any

---

[12] Because plaintiffs' positions often changed, or new arguments were raised for the first time in briefs or at oral argument, and were at times difficult to follow, in an Order on June 22, 2015, the court permitted plaintiffs to submit a discussion of the relevant statutory schemes on which plaintiffs tried to rely.

other change in status." This statute provides that "[t]he rate of basic pay to which an employee is entitled is governed by regulations prescribed by the Office of Personnel Management . . . when . . . (2) he is transferred from a position in a legislative, judicial, or executive branch to which this subchapter applies to another such position." 5 U.S.C. § 5334(a)(2) (2012). Plaintiffs are correct that this statute establishes a pay rate entitlement; however, the entitlement is only for certain Federal employees described in the statute, including "[a]n employee who is promoted or transferred to a position in a higher grade." 5 U.S.C. § 5334(b) (2012). Plaintiffs do not match any of the employee descriptions in the statute for whom a substantive entitlement to pay is granted. Additionally, plaintiffs assert that 5 U.S.C. § 5363 "[s]ets out [the] framework for Federal employees' pay retention entitlement." This statute creates an employee's entitlement to pay when "the employee's former rate of basic pay is greater than the maximum rate of basic pay payable for the grade of the employee's position" immediately after the occurrence of four specifically enumerated events.[13] See 5 U.S.C. § 5363(a)(1)-(4) (2012). Plaintiffs' circumstances do not pair with any of the enumerated events. Plaintiffs, therefore, have failed to plausibly allege facts that would entitle them to relief under either 5 U.S.C. § 5334 or 5 U.S.C. § 5363. Therefore, to the extent plaintiffs have submitted claims under 5 U.S.C. § 5334 and 5 U.S.C. § 5363, those claims are dismissed.

---

[13] 5 U.S.C. § 5363 states:

a) Any employee--

(1) who ceases to be entitled to the benefits of section 5362 of this title by reason of the expiration of the 2-year period of coverage provided under such section;
(2) who is in a position subject to this subchapter and who is subject to a reduction or termination of a special rate of pay established under section 5305 of this title (or corresponding prior provision of this title);
(3) who is in a position subject to this subchapter and who (but for this section) would be subject to a reduction in pay under circumstances prescribed by the Office of Personnel Management by regulation to warrant the application of this section; or
(4) who is in a position subject to this subchapter and who is subject to a reduction or termination of a rate of pay established under subchapter IX of chapter 53;

is entitled to a rate of basic pay in accordance with regulations prescribed by the Office of Personnel Management in conformity with the provisions of this section.

5 U.S.C. § 5363(a).

Also in their supplemental brief, plaintiffs allege that the U.S. Marshals Service did not follow the proper notice and waiver requirements prescribed in 5 C.F.R. § 302.102(b), which states:

> (b) Except as authorized under paragraph (c) of this section,[14] a person appointed to an excepted position does not acquire a competitive status by reason of the appointment. When an employee serving under a nontemporary appointment in the competitive service is selected for an excepted appointment, the agency must—
>
>> (1) Inform the employee that, because the position is in the excepted service, it may not be filled by a competitive appointment, and that acceptance of the proposed appointment will take him/her out of the competitive service while he/she occupies the position; and
>>
>> (2) Obtain from the employee a written statement that he/she understands he/she is leaving the competitive service voluntarily to accept an appointment in the excepted service.

5 C.F.R. § 302.102(b) (2015).  This regulation does not create a substantive right for plaintiffs to make a claim for money against the United States, therefore, this regulation cannot be the basis for this court to invoke jurisdiction under the Tucker Act.  Accordingly, to the extent plaintiffs have submitted claims for money damages based on 5 C.F.R. § 302.102(b), those claims are dismissed for lack of subject matter jurisdiction.

Plaintiffs also cite 5 C.F.R. § 531.211(b) as describing "pay entitlement upon reappointment of an employee with prior Federal service."  This regulation states:

> (b) Reemployment. For an employee who has previous civilian service in the Federal Government, an agency must set the payable rate of basic pay upon reemployment at the minimum rate of the highest applicable rate range for the employee's position of record unless—

---

[14] 5 C.F.R. § 302.102(c) (2015) states:

> Upon a finding by OPM that in a particular situation the action will be in the interest of good administration, OPM <u>may</u> authorize an agency to make appointments to specified positions in the excepted service in the same manner as to positions in the competitive service. Persons given career-conditional or career appointments pursuant to a specific authorization by OPM under this paragraph may acquire a competitive status as provided in part 315 of this chapter.

(emphasis added).

(1) The employee meets the conditions in § 531.212 and an agency determines it is appropriate to set pay under that section; or

(2) The employee is eligible for a higher payable rate under the maximum payable rate rule in § 531.221 and the agency chooses to apply that rule.

5 C.F.R. § 531.211(b)(2012).   "Reemployment" is defined as "employment, including reinstatement or another type of appointment, after a break in service of at least 1 full workday."  5 C.F.R. § 531.203.  On the same page in plaintiffs' supplemental brief, they state: "5 C.F.R. § 531.203–[d]efines 'transfer' as a 'change of an employee, without a break in service of 1 full workday, from one branch of the Federal Government (executive, legislative, or judicial) to another or from one agency to another.' Again, this is what occurred with the plaintiffs."  Given that plaintiffs do not allege that they were subject to reemployment, but were transferred, they have not plausibly alleged an entitlement to relief under this regulation.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is **GRANTED**.  Plaintiffs' amended complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**